# Law *v.* Home Mutual Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Mutual insurance—Ice houses—Vacant or unoccupied premises—Agent.*

Where a mutual insurance company issued a policy of fire insurance on April 1, on two ice houses which were entirely empty at the date of the policy because of a failure of the ice crop for the two preceding years, and it appears that the general agent of the company had indorsed his approval of the policy on the back of the application before it was issued, in compliance with the by-laws, and it also appears that the agent knew of the state of the property and that the insured had made no misrepresentations of concealment in order to effect the insurance, the company will be liable for a loss occasioned by the subse-

quent burning of the ice houses, although the policy provided that if the premises should become vacant or unoccupied "and so remain more than ten days without notice or consent of this company in writing, then this policy shall be void."

Argued Oct. 27, 1913.   Appeal, No. 244, Oct. T., 1913, by defendant, from judgment of C. P. Blair Co., June T., 1912, No. 455, on verdict for plaintiff in case of John H. Law v. Home Mutual Fire Insurance Company.   Before · RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Assumpsit on a policy of fire insurance.   Before BALDRIDGE, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $651.82.   Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions.

*Marion D. Patterson,* for appellant.—The consent of the company to avoid the written requirements of the policy must be indorsed on the policy or given in writing where such written consent is required by the provisions of the policy: Bemis v. Insurance Company, 200 Pa. 340; Penn Mutual Fire Insurance Company v. Schmidt, 119 Pa. 449; Hench v. Insurance Company, 122 Pa. 128; Seybert v. Insurance Company, 103 Pa. 282.

*Robert W. Smith,* with him *J. Banks Kurtz,* for appellee. —The company is bound when its agent insures empty ice houses: Morotock Ins. Co. v. Pankey, 91 Va. 259; Des Moines Ice Co. v. Niagara Fire Ins. Co., 99 Iowa, 193; Louck v. Reading Fire Ins. Co., 9 York Legal Rec. 169; Moore v. Fire Ins. Co., 199 Pa. 49; Browning

v. Home Ins. Co., 71 N. Y. 508; Short v. Ins. Co., 90 N. Y. 16; Louck v. Orient Ins. Co., 176 Pa. 638.

OPINION BY HEAD, J., April 20, 1914:

By its policy of insurance the defendant mutual company undertook to indemnify the plaintiff against loss or damage by fire to his "two ice houses at Brush Mountain." The policy followed a written application for the insurance signed by the plaintiff in the presence of the agent of the company. The by-laws of the defendant which were offered in evidence provide, inter alia, "No policy shall be issued unless the application therefor is approved by the director resident of the township in which the property is situate, or the agent. of the company. It shall be the duty of the director or agent to fix the valuation or amount to be insured, to witness the signature of the applicant to the application, and to endorse his approval of the same on the back of the application before it is delivered to the secretary for the issuing of the policy." Apparently the application was made and forwarded in accordance with these requirements. It valued the property insured at $1,100. It provided for insurance to the extent of $800. The signature of the applicant was witnessed by H. M. Estep, agent of the company, and on the back thereof appeared the following indorsement: "Approved by H. M. Estep, general agent of the company, April 1, 1909." This memorandum or indorsement is signed by the secretary of the defendant company.

It appeared the ice crop on which these ice houses depended for supply had failed for two successive years prior to the date of the policy. At the time of the issue of the policy they were entirely empty. As the policy bore the date of April 1, 1909, there could have been no reasonable expectation that they would be filled with ice before the following winter. These houses had previously been insured in the same defendant company, but that policy had expired and the plaintiff had manifested no in-

tention of renewing the same until he was visited by the defendant's agent to solicit such renewal. The jury could readily find, from the evidence, that the agent was fully acquainted with the exact situation and conditions of the property insured. It was his duty so to inform himself, and he certified to his company that he had performed the duty imposed on him by the by-laws. It is not pretended there was the slightest effort on the part of the plaintiff to conceal or misrepresent the state of the property in order to effect the insurance. The policy contained, inter alia, the following provision: "Or if the above mentioned premises shall become vacant or unoccupied and so remain more than ten days without notice or consent of this company in writing, then this policy shall be void."

The property insured was destroyed by fire during the term of the policy. The company declined to pay, resting its refusal chiefly, if not entirely, on the theory there had been a breach of the clause of the policy just quoted in that the ice houses had remained vacant and unoccupied for more than ten days after the issue of the policy and previous to the fire. The learned trial judge declined to instruct the jury, as requested, that under the circumstances stated there had been such a breach of the policy covenant as would preclude a recovery. He submitted to them, however, the question whether or not the plaintiff had done or omitted to do anything which materially increased the risk which the company had voluntarily assumed, and the verdict on this question was with the plaintiff.

The case in hand is a stronger one for the plaintiff than was presented in Louck v. Orient Insurance Company, 176 Pa. 638. In that case the subject of the insurance was a distillery which had not been operated for some two years before the insurance was taken out, and continued in the same condition down to the date of the fire. The syllabus of that case, fully sustained by the opinion of Mr. Justice DEAN, is as follows: "A fire

insurance company receiving a property owner's money, and undertaking to indemnify him by a written contract descriptive of the subject against loss by fire, cannot plead ignorance of the palpable condition of that subject where there is no pretense of fraud, misrepresentation or concealment." In the present case we have the additional and important fact that the defendant company, in its by-laws, placed upon its own agent the duty of ascertaining the condition of the property to be insured, of fixing its value in the application, and determining the amount of insurance which the company ought to write on such property, and he certified that he had performed these duties. It was upon this certificate presumably the company relied, rather than any statement made by the assured. In point of fact it is not pretended the latter made any statement with relation to the property that would afford the slightest foundation for any charge of fraud or misrepresentation. He testifies he explained the whole situation of his business to the agent, and the latter can scarcely be said to have denied the truth of this testimony. In the case to which we have just referred, the policy described the property as "occupied by the assured as a distillery." The present policy contains nothing suggestive of occupation of the ice houses by the assured. Mr. Justice DEAN, in the course of his opinion, says: "There is not one word in the description suggesting the stills were then in operation; the purpose of the buildings is plainly indicated by the word 'distillery,' but nothing further. It must be borne in mind, these are the written words of the company inserted in the contract framed by it, and are therefore to be taken as fully describing what they supposed they were insuring. It is not intimated that Louck represented the distillery was in operation, or that he concealed from the company the fact that it was not then and had not been in operation for years." In that case the learned trial court had entered judgment for the defendant non obstante veredicto. The judgment was re-

versed with a direction that judgment be entered on the verdict for the plaintiff. The application of the doctrine of this case to the facts appearing in the present record is necessarily destructive of the principal defense advanced by the company.

But a word need be said in reference to the assignments of error. The refusal of the learned trial judge to enter a compulsory nonsuit is not assignable for error. The first assignment therefore need not be considered. The second assignment rests on the refusal of the trial judge to strike out certain testimony on the ground that the authority of the agent who took the application had not been shown. We are of opinion that the by-laws of the company, the duties imposed on the agent, the acts done by the latter in pursuance thereof, and the acceptance by the company of the application with the approval of this individual who signed his name as general agent, were ample authority to justify the action of the court complained of. The second and fourth assignments are dismissed. The third and fifth assignments complain of the refusal of the court to direct a verdict for the defendant because of the vacant condition of the ice houses at and preceding the time of the fire. We have already endeavored to show that the defense on this ground could not be sustained under the authorities, and therefore these assignments must be dismissed. The remaining ones practically complain of the refusal of the court afterwards to enter judgment for the defendant notwithstanding the verdict.

An examination of the entire record satisfies us the cause was properly tried and the judgment entered on the verdict ought not to be interfered with.

Judgment affirmed.